Mr. Chris Stewart, Esq. Stewart Law Firm 1020 West 4th Street, Suite 400 Little Rock, Arkansas 72201
Dear Mr. Stewart:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2007), of the popular name and ballot title for a proposed constitutional amendment. You previously submitted a similar measure which was rejected due to ambiguities in the text of the proposed measure. See Op. Att'y Gen. 2009-179. You have revised the text, and now resubmit the following popular name and ballot title for the amendment:
 Popular Name AN AMENDMENT TO REPEAL ALL STATE TAXES AND ENACT A FLAT RATE SALES TAX Ballot Title A CONSTITUTIONAL AMENDMENT TO REPEAL ALL STATE TAXES AND TO ENACT A FLAT RATE SALES TAX; EFFECTIVE JULY 1, 2012, ALL STATE TAXES ARE REPEALED AND A FLAT RATE SALES TAX SHALL BE ENACTED; THE GENERAL ASSEMBLY SHALL DETERMINE THE FLAT RATE SALES TAX RATE; THE GENERAL ASSEMBLY SHALL DETERMINE THE DISTRIBUTION OF THE FLAT RATE SALES TAX; THE GENERAL ASSEMBLY SHALL DETERMINE THE FLAT RATE SALES TAX BEFORE *Page 2 
JULY 1, 2012; THE GENERAL ASSEMBLY MAY CHANGE THE INITIAL RATE OF THE FLAT RATE SALES TAX BY A VOTE OF AT LEAST THREE-FOURTHS (3/4THS) OF THE MEMBERS ELECTED TO EACH HOUSE; THE FLAT RATE SALES TAX RATE DETERMINED BY THE GENERAL ASSEMBLY MAY IMPACT CURRENT STATE REVENUES; THE FLAT RATE SALES TAX SHALL NOT INHIBIT OR AFFECT THE POWER OF A COUNTY OR MUNICIPALITY TO LEVY AND COLLECT LOCAL TAXES; NO FLAT RATE SALES TAX IS IMPOSED ON: A NEW CONSUMABLE GOOD OR SERVICE PURCHASED IN THE STATE FOR A BUSINESS PURPOSE IN A TRADE OR BUSINESS, INCLUDING THE RESALE OF A CONSUMABLE GOOD; A TAXABLE PROPERTY OR SERVICE PURCHASED IN THE STATE FOR AN INVESTMENT PURPOSE AND HELD EXCLUSIVELY FOR AN INVESTMENT PURPOSE; A CONSUMABLE GOOD THAT HAS BEEN TAXED AT THE INITIAL RETAIL LEVEL AND IS TRANSFERRED BY A SUBSEQUENT SALE; AND, SERVICES REQUIRED BY LAW TO BE PERFORMED BY A TRADE OR BUSINESS; EACH CITIZEN WILL BE PAID A MONTHLY CITIZEN PAYMENT; THE PAYMENT WILL BE EQUAL TO THE FLAT RATE SALES TAX MULTIPLIED BY THE VALUE OF THE POVERTY LEVEL DIVIDED BY TWELVE PAYMENTS; THE ANNUAL POVERTY LEVEL SHALL BE DETERMINED BY THE DEPARTMENT OF HEALTH AND HUMAN SERVICES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certificationnor rejection of a popular name and ballot title reflects my view ofthe merits of the proposal. This Office has been given no authorityto consider the merits of any measure. *Page 3 
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669 (2000);Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119 (1996); andPlugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensurethat the popular name and ballot title honestly, intelligibly, andfairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere,283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v.Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen,318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v.McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting *Page 4 
booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v.McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen,303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to six sets of ambiguities. The text of the proposed amendment mandates that "[e]ach citizen" receive a "monthly citizen payment," which ensures that "no citizen pays a flat rate sales tax on basic necessities up to the poverty level." This phraseology contains at least two key ambiguities. First, the text never defines the phrase "basic necessities." Because money spent on "basic necessities" is used to calculate the "citizen payment," the text remains unclear regarding how, specifically, the "citizen payment" is calculated.
The second ambiguity in this regard lies in linking "basic necessities" to "the poverty level." As noted above, the "citizen payment" ensures that "no citizen pays a flat rate sales tax on basic necessities up to the poverty level." It remains unclear to me in what sense the phrase "up to the poverty level" places a cap on the "citizen payment." *Page 5 
The second set of ambiguities involves the items that are exempted from the sales tax. One such exemption states: "No flat rate sales tax is imposed on . . . [s]ervices required by law to be performed by a trade or business." This exception is exceedingly vague for several reasons. First, I am uncertain what "law" this is referring to. Second, the breadth of "trade or business" is unclear. Third, the exemption does not clearly delineate the difference between a product and a service. This third problem may arise because the text uses "service" to define "service": "`Service' means a service performed by a person for another person. . . ." Fourth, the term "person," which is used in the ambiguous definition of "service," is itself undefined. This lack of definition makes it difficult to determine the precise intent of the exemption for "a service performed by a person for another person." It is critical that the voter have a clear understanding of the sales tax and the exemptions from the tax.
A third ambiguity arises from another of the exemptions from the sales tax. The text states: "No flat rate sales tax is imposed on . . . [a] new consumable good or service purchased in the state for a business purpose in a trade or business, including the resale of a consumable good." This exemption is ambiguous is in three ways. First, the text never defines what qualifies as a "new consumable good." Thus, it is unclear which items fall under the exemption. Second, the scope of the phrase "resale of a consumable good" is also unclear because the text is ambiguous regarding whether the phrase only encompasses items that were originally purchased "for a business purpose in a trade or business." Third, it is not entirely clear how the exemption applies to the wholesale and retail levels of business because the text does not mention or define those levels of purchasing or "resal[ing] of a consumable good."
The fourth set of ambiguities arises from the manner in which the text defines "all state taxes." First, the text uses "state taxes" to define "state taxes": "`All state taxes' includes and is notlimited to state taxes levied on a consumable good or service under the Arkansas Constitution and Arkansas Code Title 26, Subtitle 5, and includes: (A) A capital gains tax; (B) A corporate tax; (C) An income tax; (D) A payroll tax; and, (E) The real estate transfer tax." (Emphasis added.) Second, this definition is ambiguous because it fails to clearly state whether "all state taxes" means all taxes levied by the Arkansas state government only, or whether it includes all taxes levied by any subordinate level of government in the State of *Page 6 
Arkansas, and whether it includes, for instance, the uniform rate of ad valorem property-tax levied pursuant to Ark. Const. art. 14, § 3 for the schools.
A fifth set of ambiguities arises from the text's use of "citizen." The text defines "citizen" as "a person satisfying all requirements for citizenship according to United States and Arkansas laws." Two problems arise from this definition. First, as noted above, the term "person" is not defined. Thus, the scope of "citizen" is unclear. Another problem arises when "citizen" is considered in the context of the "citizen payment." The text only permits a "person" who qualifies as a "citizen" to receive the "citizen payment," which "ensures that no citizen pays a flat rate sales tax on basic necessities up to the poverty level." If "all state taxes" were abolished, per this proposed amendment, the General Assembly would probably have to significantly raise the sales tax to continue a modicum of the state services currently offered. This would raise the price of "consumable goods." Because citizens from neighboring states would not receive any "citizen payment," the price of "consumable goods" would be higher than before, which may discourage them from buying "consumable goods" in Arkansas. This may decrease revenues for some Arkansas businesses. This is something that would likely give the voter grounds for serious reflection. The failure to mention this latter fact in the ballot title is an omission that may, as the Arkansas Supreme Court stated, "thwart a fair understanding of the issues presented." E.g., Crochet v. Priest,326 Ark. 338, 342, 931 S.W.2d 128, 130 (1996).
Additionally, in the first rejection of this proposed amendment, I noted that your ballot title failed to mention that the abolition of all state taxes may impact state revenues, and thus the availability of existing state services. Your attempt to remedy that omission shifts the focus from the abolition of state taxes to the General Assembly: "the flat rate sales tax rate determined by the General Assembly may impact current state revenues." As you can see from the immediately preceding paragraph, the proposed amendment impacts state revenues, not just the initial rate set by the General Assembly.
A sixth ambiguity arises from the definition of "flat rate sales tax." The text defines a flat rate sales tax partially in terms of the location at which the tax is paid: "`Flat rate sales tax' means a single, equal tax rate levied at the retail level of purchase, or where taxes are paid. . . ." The phrase "or where taxes are paid" is unclear. If the tax is a sales tax "levied at the retail level of purchase," it is unclear *Page 7 
what other payment locations would fall under the phrase "or where taxes are paid."
While there are several other, more narrow, ambiguities in other areas of your proposed amendment, these sixth sets of ambiguities are sufficient to reject your ballot title. Further, additional ambiguities may come to light on further review of any revisions of this proposed amendment.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure."Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefore, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your *Page 8 
submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General

 *Page 1